MISSOURI-KANSAS-TEXAS RAILROAD COMPANY OF TEXAS
V. SCOTT SNODGRASS, JR.

No. A-2893. Decided January 10, 1951.
(235 S. W., 2d Series, 448.)

*G. H. Penland, M. E. Clinton* and *O. O. Touchstone,* all of Dallas, for appellant.

*Scott Snodgrass, Sr.,* of San Angelo, and *Morris Watson,* of Roby, for appellee.

MR. JUSTICE SHARP delivered the opinion of the Court.

This case is before this Court on a certificate from the Court of Civil Appeals at Eastland. The certificate reads as follows:

"Scott Snodgrass, Jr., at all times material, has been a resident of Tom Green County, Texas. He was injured in a collision between an automobile in which he was riding and one of said Railroad Corporation's trains in Dallas County. Said Railroad Company does not operate a railroad or have an agent in Tom Green County but does operate its railroad and have agents in Fisher and Callahan Counties. Snodgrass sued the Railroad Company in Fisher County for the injuries so suffered in Dallas County. The Railroad Company filed its plea of privilege to be sued in Dallas County. Snodgrass asserted the right to maintain venue in Fisher County under exception 25, Art. 1995, which, under the circumstances stated, authorizes Snodgrass to maintain his suit 'in the County nearest that in which the plaintiff resided at the time of the injury.'

"It is agreed that the air line distance between San Angelo and Roby is the same as the air line distance between San Angelo and Baird. It is admitted that from closest boundary line to closest boundary line, Tom Green County is closer to Callahan County than it is to Fisher County. It was further stipulated that said Railroad Company does not operate a line of railway nor have an agent in any county closer to Tom Green County than Fisher and Callahan Counties. With said facts

admitted, the trial court overruled the Railroad Company's plea of privilege. It appealed to this court. This court wrote an opinion, attached hereto, affirming the judgment of the trial court, and, in effect, held that since the distance between San Angelo, the county seat of Tom Green County, and Roby, the county seat of Fisher County, by the usually traveled and most practical route, is less than the distance between San Angelo and Baird, the county seat of Callahan County, by the usually traveled and most practical route, that Fisher County is the county nearest that in which the plaintiff resided at the time of his injury, within the meaning of exception 25, Art. 1995.

"The appellant has filed a motion for rehearing and to certify. Because this case cannot reach the Supreme Court of Texas by writ of error, the importance of the question and our uncertainty as to the proper construction of said statute, we deem it advisable to respectfully certify the following question:

"Since the distance between the county seat of Tom Green and the county seat of Fisher County, by the usually traveled and most practical route, is less than the distance between the county seat of Tom Green County and the county seat of Callahan County, by the usually traveled and most practical route, under the facts stated, is Fisher County the 'county nearest that in which the plaintiff resided at the time of his injury,' within the meaning of exception 25, Art. 1995?"

This case involves the construction of Section 25 of Article 1995, Vernon's Annotated Revised Civil Statutes. That section reads as follows:

"25 Railway personal injuries.—Suits against railroad corporations, or against any assignee, trustee or receiver operating any railway in this State, for damages arising from personal injuries, resulting in death or otherwise, shall be brought either in the county in which the injury occurred, or in the county in which the plaintiff resided at the time of the injury. If the defendant railroad corporation does not run or operate its railway in, or through, the county in which the plaintiff resided at the time of the injury, and has no agent in said county, then said suit shall be brought either in the county in which the injury occurred, or in the county nearest that in which the plaintiff resided at the time of the injury, in which the defendant corporation runs or operates its road, or has an agent. When an injury occurs within one-half mile of the boundary line dividing two counties, suit may be brought in either of said

counties. If the plaintiff is a nonresident of this State then such suit shall be brought in the county in which the injury occurred, or in the county in which the defendant railroad corporation has its principal office."

The question presented here involves the construction of that part of Section 25 of Article 1995 which provides that a "suit shall be brought * * * in the county nearest that in which the plaintiff resided at the time of the injury, in which the defendant corporation runs or operates its road, or has an agent." Appellant contends that the statute should be construed to mean that the suit should have been brought in Callahan County, whose boundary line is nearest the closest boundary line of Tom Green County, where appellee resided.

This suit was filed in Fisher County, where appellant has an agent. It was stipulated: "(6) that the distance between the county seat of Tom Green County and the county seat of Fisher County, by the usually traveled and most practical route, is less than the distance between the county seat of Tom Green County and the county seat of Callahan County, by the usually traveled and most practical route. (7) That the air line distance between San Angelo and Roby and San Aneglo and Blaird is the same and (8) that from the closest boundary line to the closest boundary line, Callahan County is nearer Tom Green County than Fisher County."

■ Lawsuits like the one involved here must be filed and tried in the courthouse of a county. Courthouses are built and maintained for the principal purpose of furnishing a place where the business of the counties is transacted and all important litigation is tried and disposed of. It has long been the policy of the law, where, as here, it is required to bring a suit in a certain county different from the county in which the plaintiff resided at the time of his injury, that the courthouse of the county in which plaintiff resided at the time of his injury is considered in connection with the courthouse in the county nearest that county, in fixing the venue of the case. Likewise, upon granting a change of venue in a cause, the courthouse of the county in which a suit is pending and the courthouse of the county to which it is sought to be removed are considered in fixing the venue of the case.

■ The law provides, in both civil and criminal matters, for a change of venue when the administration of justice demands it. Article 2172, Revised Civil Statutes 1925, designated the

county to which a case shall be transferred when a change of venue is granted in civil matters, and provided: "If the application is granted, the cause shall be removed to an adjoining county, the courthouse of which is nearest the courthouse of the county in which the suit is pending, * * *."

Article 565, Texas Code of Criminal Procedure 1925, also provides: "Upon the grant of a change of venue, the cause shall be removed to some adjoining county, the courthouse of which is nearest to the courthouse of the county where the prosecution is pending, * * *."

Article 2172 is now Rule 259 of the Texas Rules of Civil Procedure, and the pertinent part thereof reads as follows: "If the application is granted, the cause shall be removed: (a) If from a district court, to any county in the same or an adjoining district; (b) If from a county Court, to any adjoining county; * * *." This rule obtains where an application for change of venue is granted but does not change the policy of the law expressed in Section 25, supra, fixing the venue of certain suits.

In 1881 this Court, in Shaw v. Cade, 54 Texas 307, in construing the statute providing for a change of venue, said: "The opinion of the court is that the nearest courthouse, in the meaning of the statute, is not necessarily the one nearest by geometrical measurement, but may be the one most convenient of access and nearest by the usually traveled route."

In the early case of Coover v. Davenport, 1 Heiskell 368, 48 Tenn. 368, 383, in construing a statute containing language which required that when the venue of a case was changed the cause must be sent to the nearest county, it was said: "What is meant in the statute by the nearest county? In one sense, none of them are nearest, as all are adjoining to Franklin. We must interpret the language so as to carry out the object of the Legislature. The object most clearly was to require the Judge to accommodate his action to the convenience of the parties and witnesses in the cause. This was to be done by sending the cause to the nearest county, meaning that county whose Court-house was nearest to that of Franklin county."

The case of Burlington-Rock Island R. Co. v. Garlitz (Civ App.), 151 S. W. 2d 889, involved the construction of Section 25, supra, and after discussing the statutes relating to the question, the opinion in that case cited with approval the hold-

ing in the case of Coover v. Davenport, supra. The Court of Civil Appeals held that the term "nearest county" means the county the courthouse of which is nearest the courthouse of the county in which the plaintiff resided at the time of the injury.

Suppose plaintiff at the time of his injury resided in a county in which the venue of his cause was not fixed by law, but under the law venue was designated in the adjoining county or adjoining counties. It is a matter of common knowledge that many counties in this State have more than two adjoining counties, and if each of such adjoining counties became the nearest county to the county in which plaintiff resided at the time of his injury, then it is quite obvious that much confusion could arise as to the county in which the venue of the suit would lie. Therefore, the term "nearest county" means that county the courthouse of which is nearest the courthouse of the county in which plaintiff resided at the time of his injury.

We answer the certified question, "Yes."

Associate Justice Wilson not participating.

Opinion delivered January 10, 1951.